**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**HEATHER GRIMES**                                                                          **PLAINTIFF**

**VS.**                                        **3:05CV00188 WRW**

**PRUDENTIAL FINANCIAL INC.  d/b/a**
**PRUDENTIAL INSURANCE COMPANY**
**OF AMERICA and WAL-MART STORES**                                    **DEFENDANTS**


**ORDER**

This is an ERISA claim for benefits under 29 U.S.C. § 1132 (a)(1)(B), and equitable

relief under 29 U.S.C. § 1132(a)(3).  Plaintiff is the beneficiary of disputed benefits under a

Prudential Term Life Plan.  She is seeking additional insurance benefits from a plan administered

by her late husband's former employer, Wal-Mart Stores, Inc. ("Wal-Mart"), and insured by

Prudential Financial Company ("Prudential").  Wal-Mart is the plan administrator and Prudential

is the claims administrator.   Pending is Defendants' Motion for Summary Judgment.[1]  Plaintiff,

Ms. Heather Grimes ("Grimes") responded, and, in the alternative, moved for Summary

Judgment,[2] to which Defendants Responded.[3]  The Parties stipulated that Plaintiff exhausted her

administrative review before filing her complaint.


**I.      Background**

---

[1]Doc.  No. 8.

[2]Doc.  No. 11.

[3]Doc.  No. 17.

1

Grimes' late husband worked for Wal-Mart and participated in an employee benefit plan that included life insurance.  He participated in a Basic Term Life Plan that promised to pay benefits based on his annual income of $21,000.00.  In addition to this, he participated in an Optional Life Insurance Plan that increased the benefit payout by $25,000.00 -- bringing the lump-sum payout to a total of $46,000.00.   In October 2004, Grimes' husband took advantage of an offer to increase his optional coverage from $25,000.00 to $125,000.00.  This increase in benefits brought the lump-sum payout on all his life insurance coverage to $171,000.00.   He was notified that the additional life insurance coverage would become effective on January 1, 2005.

On December 29, 2004, Grimes' husband was diagnosed with leukemia and hospitalized.  According to Grimes, her husband was advised by his Wal-Mart manager to request a leave of absence ("LOA").   On December 31, 2005, he complied with the manager's recommendation and requested LOA, even though he had accrued vacation days.  On January 3, 2005, he died.  On the same day, Wal-Mart approved his LOA request.

After her husband's death, Prudential turned down Grimes' application for life insurance $171,000.00 in life insurance benefits.   Prudential paid her $46,000.00.   Prudential based this decision on plan terms that require an employee to be "actively at work" before the policy can become effective.   In this case, Grimes' husband was in the hospital on the effective date.

On February 24, 2005,  Prudential informed Grimes that her husband was not actively at work on January 1, 2005, and therefore, his additional coverage had not become effective.  In making this decision, Prudential reviewed the Wal-Mart claim notification sheet, the death certificate, and the Group Contract for Wal-mart Stores, Inc.[4]   Plaintiff appealed, and her appeal

---

[4]Doc.  No. 6, exhibit 2, at G-053-055.

was denied on April 8, 2005.   Plaintiff appealed again, arguing the following points: that the
LOA was unnecessary; that Mr. Grimes should have been considered on vacation during the
relevant time; that  Mr. Grimes was misled by Wal-Mart into requesting a LOA; that Wal-Mart
changed the dates on the LOA form for the purpose of delaying the effective date of coverage;
and that Wal-Mart deducted the premium for the additional coverage, indicating that the
coverage had become effective on January 1, 2005.

The second appeal was denied June 23, 2005.  Prudential relied on the following policy
language:   "Your Associate Insurance. . . will be delayed if you do [not] meet the Active Work
Requirement on the day your insurance would otherwise begin."[5]   Prudential told Grimes' that
"there is no dispute over the fact that Mr. Grimes was not actively at work at the time coverage
was made effective regardless when the leave of absence form was signed."[6]

During the administrative process, Prudential never mentioned conflicting language in
the plan summary that created an exception to the "actively at work" requirement.  This language
states that:  "[I]f an Associate is not actively at work for any reason *other than a scheduled
vacation* on the effective date of coverage, then the coverage will be delayed until the Associate
returns to active work."[7]   This "scheduled vacation" exception was overlooked during the
administrative process.  Now, in their responsive pleadings, Defendants maintain that Grimes'
late husband was not on a "scheduled vacation" during the relevant time frame.

Grimes alleges that Defendants breached their fiduciary duties when Wal-Mart's
manager encouraged her husband to apply for LOA instead of vacation, and when Prudential
failed to reasonably interpret the terms of the plan and the plan summary.  Grimes asserts

---

[5]Doc.  No. 6, exhibit 2, at G-094-096.

[6]*Id.*

[7]Doc.  No. 6, exhibit 7, at G-358 (emphasis added).

Prudential has a conflict of interest because it is both the administrator and the insurer of benefits.  Grimes also alleges that Wal-Mart filled in the LOA dates after her husband's death, in an attempt to nullify the additional coverage.  Prudential argues that there is no proof of a conflict of interest, it reasonably interpreted the terms of the plan when it denied coverage, and questions pertaining to the LOA request are irrelevant.

The Plan gives Prudential discretionary power and states that:  "[A]s Claims Administrator, it has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits."[8]

## II.    Standard of Review

ERISA contains no standard of review, but the reviewing court should apply a *de novo* standard of review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[9] Where a plan gives the administrator discretionary power, the administrator's decision is reviewed only for an abuse of discretion.[10]

The discretionary standard requires the plan administrator to make decisions based on reasonable interpretations of the terms of the plan and on substantial evidence.  This means that the decision must be supported by enough evidence (more than a scintilla but less than a preponderance) to convince a reasonable person that it is proper.[11]

A court can apply a less deferential standard where the plan beneficiary presents

---

[8]Doc.  No. 6, exhibit 6, at G-295.

[9]*Firestone and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[10]*Firestone*, 489 U.S. at 111; *King v. Hartford Life and Accidental Insurance Co.*, 414 F.3d 994 (8th Cir. 2005).

[11]*Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996).

"material probative evidence" demonstrating that a palpable conflict of interest or serious procedural irregularity existed, which caused a serious breach of an administrator's fiduciary duty toward a plan beneficiary.[12]  The conflict of interest, or procedural defect must have some connection to the decision reached.[13]

Grimes must offer evidence that "gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the fiduciary's whim."[14]  Evidence that the plan administrator did not perform a "meaningful review" of the request for benefits can support a less deferential review, and evidence of procedural irregularities will also lessen the standard of review.[15]  If Grimes succeeds in raising such doubts, she is entitled to a *de novo* review.

A.     Standard of review for equitable relief

In addition to challenging Prudential's plan interpretation and the basis for its denial of benefits, Grimes also alleges that Wal-Mart misled her husband, failed to provide him with a clear summary of the plan, manipulated the LOA process, and otherwise breached its duty to act in good faith.  These allegations involve ERISA's equitable provisions.[16]

In *Firestone*, the Supreme Court limited its analysis to actions challenging benefit denials based on plan interpretations, and did not address the appropriate standard of review for actions

---

[12]*Delta Family-Care Disability and Survivorship Plan v. Marshall,* 258 F.3d 834, 840 (8th Cir. 2001).

[13]*Schatz v. Mutual of Omaha Inc. Co.*, 220 F.3d 944, 948 (8th Cir. 2000).

[14]*Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998).

[15]*Janssen v. Minneapolis Auto Dealers Benefit Fund*, 447 F.3d 1109 (8th Cir. 2006).

[16] 29 U.S.C. §§ 1022, 1104, and 1133.

5

under the equitable provisions of ERISA.[17]  So, while a deferential standard of review is

available to claims that involve plan interpretations, claims that address a defendant's fiduciary

responsibilities under the equitable sections of ERISA should be reviewed under a *de novo*

standard.[18]

### B.  Standard for Review of Matters Outside the Administrative Record

Review of an ERISA claim is normally limited to the administrative record.[19] Additional

evidence gathering is forbidden on deferential review, and discouraged on *de novo* review.[20]

But, a district court may admit additional evidence if the plaintiff shows good cause.[21]

In limited circumstances, evidence outside the administrative record is considered

relevant, without a good cause showing.  For instance, this circuit, and others, have allowed

discovery of additional evidence on issues linked to either the development or the credibility of

the administrative record.  This involves allowing evidence that may show: (1) if a conflict of

interest exists, (2) if a serious procedural error was committed, (3) if a fiduciary duty was

breached, and (4) if there is bad faith.[22]

---

[17]*Firestone*, 489 U.S. at 108.

[18]*Firestone*, 489 U.S. at 111-12; *Moench v. Robertson*, 62 F.3d 553, 564-65 (3d Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996); *see also In re Unisys Savings Plan Litigation*, 173 F.3d 145, 154 (3d Cir. 1999)*; Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n, AFL-CIO Pension Plan and Trust,* 896 F.2d 1330, 1341 n. 20 (11th Cir. 1990)*; Ches v. Archer,* 827 F.Supp. 159, 165 (W.D.N.Y. 1993).

[19]*Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995).

[20]*Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997) (*quoting Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993)).

[21]*King*, 414 F.3d 994.

[22]*Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n. 4 (8th Cir. 1998) (limited discovery of additional evidence is appropriate for the purpose of determining the

III.    **Equitable Remedies under ERISA**

ERISA's civil enforcement provision, lists six types of actions that may be pursued for

violations of the statute.[23]  One provision allows a beneficiary to bring an action for equitable

relief and for redress of violations.[24] This provision allows a beneficiary to seek equitable

remedies for breach of fiduciary duty in his individual capacity.[25] Recovery under this provision

is limited to equitable remedies -- such as injunctive relief or restitution -- it does not extend to

compensatory damages.[26]

Restitution can be equitable or compensatory -- the distinction lies in the purpose of the

relief sought.[27] Restitution seeks to punish the wrongdoer by taking his ill-gotten gains.  On the

---

correct standard of review); *See also  Abatie v.  Alta Health & Life Ins.  Co.*, 458 F.3d 955 (9th
Cir. 2006) (additional evidence may be taken when plan administrator has engaged in procedural
irregularities); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir.
1992) (limited discovery of additional evidence is allowed to determine if plaintiff had been
denied procedural protection under ERISA); *Zervos v. Verizon New York, Inc*., 252 F.3d 163,
174 (2d Cir. 2001) (district court is not confined to the administrative record on issue of question
of conflict of interest); *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19 (1st Cir.
2003) (certain kinds of claims -- proof of corruption--may take a reviewing court to materials
outside the administrative record); *Wildbur v. ARCO Chemical Co*., 974 F.2d 631, 638 (5th Cir.
1992) (the factual background of the administrator's determination, and any inferences of a lack
of good faith, may require the court to review evidence that was not presented to the
administrator); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d
975, 982 (7th Cir. 1999) (acknowledging that external evidence may have to be considered to
determine whether an administrator conducted a genuine evaluation of the record); *Buchanan v.
Aetna Life Ins. Co.*, 179 Fed.Appx. 304, 312, 2006 WL 1208069 at 8 (6th Cir. May 3, 2006)
(review confined to administrative record except where there is a procedural challenge).

[23]*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

[24]29 U.S.C. § 1132(a)(3)(B).

[25]*Varity Corp. v. Howe*, 516 U.S. 489, 510-13, 515 (1996).

[26]*Mertens v. Hewitt Associates*, 508 U.S. 248, 257-58 (1993); *see also Kerr v. Charles F.
Vatterott & Co.*, 184 F.3d 938 (8th Cir. 1999).

[27]*Kerr*, 184 F.3d at 944.

other hand compensatory damages seek to recover the monetary value of the harm done to a plaintiff.[28]  In some circumstances prejudgment interest is allowed as an equitable remedy under ERISA, because it prevents unjust enrichment.[29]

### A.    Fiduciary Duties of Loyalty and of Care

Under ERISA -- a person is a fiduciary with respect to a plan if he has any discretionary authority or discretionary responsibility in the administration of such plan.[30]  ERISA also gives certain responsibilities to a fiduciary, which are outlined below.

ERISA imposes a statutory duty of loyalty.  The duty of loyalty requires that a fiduciary discharge its duties for the exclusive purpose of providing benefits and paying expenses. [31]  ERISA also imposes a statutory duty of care.  The duty of care requires a fiduciary to discharge its duties "with the care, skill, and diligence that a prudent man would use."[32]

The duty of loyalty includes the "obligation to deal fairly and honestly with all plan members."[33]  The duty is breached when a plan administrator participates "knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense."[34]

---

[28]*Id. citing* 1 Dan B. Dobbs, Law of Remedies § 4.1(1), at 369-71 (2d ed.1993).

[29]*Id.* at 945-46.

[30]29 U.S.C. § 1132(a)(3).

[31]29 U.S.C. § 1104(a)(1)(A).

[32]29 U.S.C. § 1104(a)(1)(B).

[33]*Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997), *cert. denied*, 522 U.S. 914 (1997).

[34]*Howe*, 516 U.S. at 506 (1996).

The duty of care obligates the fiduciary to convey complete and accurate information material to the beneficiary's circumstance."[35] This duty imposes a "prudent person" obligation which requires a fiduciary to act as a prudent person in a similar situation.[36]

Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts.[37]  Under these principles, a fiduciary has an unyielding duty of loyalty to the beneficiary.[38]  ERISA also requires a fiduciary to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.[39]  Such a duty of loyalty forbids a fiduciary from making material misrepresentations to the beneficiary.[40]  A fiduciary breaches his duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.[41]  Misleading

---

[35]*Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

[36]29 U.S.C. § 1104(a)(1)(B); *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1162 (6th Cir. 1998); *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984).

[37]*Firestone*, 489 U.S. at 110; *see also Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir.1993) (although the statute articulates a number of fiduciary duties, Congress relied upon the common law of trusts to define the general scope of fiduciaries responsibility)(*citing Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570(1985)).

[38]*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 152-53(1985) (Congress intended to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits.).

[39]29 U.S.C. § 1104(a)(1); *see also Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).

[40]*Varity Corp. v. Howe*, 516 U.S. 489, 506(1996) (affirming *Howe v. Varity Corp.*  36 F3d 746 (1994)); *see also Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) (lying is inconsistent with the duty of loyalty owed by all fiduciaries under ERISA).

[41]*Krohn*, 173 3d at 547.

communications to plan participants regarding plan administration will support a claim for a breach of fiduciary duty.[42]

Moreover, a fiduciary's responsibility when communicating with the beneficiary includes more than a duty to refrain from intentionally misleading a beneficiary. ERISA administrators have a fiduciary obligation "not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures."[43]

Finally, a fiduciary is sometimes obliged to volunteer information to the beneficiary. "The duty to disclose crucial information is at the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA."[44] The common law of trusts identifies two instances where a trustee is under a duty to inform: (1) when a beneficiary requests information about the nature and amount of the trust property;[45] and (2) when the fiduciary knows that the beneficiary is unaware of crucial information.[46]

In other words, the duty to inform includes a duty to avoid misleading, and a duty to inform when the trustee knows that silence might be harmful.[47]  An ERISA fiduciary that knows or should know that a beneficiary is acting under a misunderstanding of plan requirements cannot

---

[42]*Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992).

[43]*Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000), *cert. denied*, 531 U.S. 1037 (2000).

[44]*Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750 (D.C. Cir. 1990).

[45]*Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996) *quoting* Restatement (Second) of Trusts § 173 (1959)).

[46]Restatement (Second) of Trusts § 173 (1959).

[47]*Howe*, 36 F.3d at 754 (stating that a beneficiary about to plunge into a ruinous course of dealing may be betrayed by silence as well as the spoken word); *see also Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997).

remain silent -- especially when that misunderstanding was fostered by the fiduciary's own

material representations or omissions.  A fiduciary is obligated to advise the beneficiary "of

circumstances that threaten interests relevant to the [fiduciary] relationship."[48]

The recognition of a limited fiduciary duty to inform a beneficiary of material facts

without a specific request for the information is not a ground-breaking proposition.[49]   Protecting

beneficiaries is one of the main purposes of ERISA:

> It is hereby declared to be the policy of this chapter to protect the interests of participants
> in employee benefit plans and their beneficiaries, by requiring the disclosure and
> reporting to participants and beneficiaries of financial and other information with respect
> thereto, by establishing standards of conduct, responsibility, and obligation for
> fiduciaries of employee benefit plans, and by providing for appropriate remedies,
> sanctions, and ready access to the federal courts.[50]

These statements demonstrate that ERISA was enacted, in part, to ensure that employees

receive sufficient information about their rights under employee benefit plans to make

well-informed decisions.[51]

---

[48]*Eddy*, 919 F.2d at 750.

[49]*Shea v. Esensten*, 107 F.3d 625, 628-29 (8th Cir. 1997) (holding that a fiduciary
breached its duty under ERISA by failing to disclose the facts necessary for beneficiary to make
an informed decision); *Jordan*, 116 F.3d at 1015 (explaining that fiduciary has an affirmative
duty to inform a beneficiary of material facts known by the fiduciary but not the beneficiary);
*Bixler v. Central Pennsylvania Teamsters Health*, 12 F.3d 1292, 1302-03 (3d Cir. 1993)
(reversing grant of summary judgment to employer on beneficiary's claim that employer
breached its fiduciary duty to affirmatively inform beneficiary of COBRA).

[50]29 U.S.C. §§ 1001(a) and (b).

[51]*Harte v. Bethlehem Steele,* 214 F.3d 446 (3rd Cir. 2000)**;** *see also Bowerman v. Wal-
Mart,* 226 F.3d 574:(7th Cir.  2000); *Beach v.  Commonwealth Edison Co.*, 382 F.3d 656 (7th
Cir. 2004).

Courts have recognized an equitable claim by a participant against an ERISA plan fiduciary when he misleads a participant or beneficiary.[52] A claim for breach of fiduciary duty based on allegations of misrepresentation is established by the following factors:  (1) the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) these representations were material misrepresentations; and (3)  the plan participant relied on those misrepresentations to his detriment.[53] Whether an affirmative misrepresentation was "material" is a mixed question of law and fact. A misrepresentation is material if there is a substantial likelihood that it would prevent a reasonable employee from making an informed decision.[54] Finally, a plaintiff's reliance on the misrepresentation must be reasonable.


**B.  Mis-representation of an Agent**

An ERISA fiduciary can be liable for the misrepresentations of its non-fiduciary agents under the apparent authority doctrine.[55] The apparent authority doctrine focuses on the reasonable reliance of the employee, and not the subjective intent of the agent.[56] Moreover, shielding a fiduciary from liability because its non-fiduciary agent did not have knowledge or intent would encourage employers to keep its representatives in the dark and dodge liability by saying their

---

[52]*Krohn*, 173 F.3d at 546; *see also* 29 U.S.C. §1002(21)(A).

[53]*James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

[54]*Id.*

[55]*Bowerman*, 226 F.3d at 589, n. 11.

[56]*See* Restatement (Third) of Agency § 2.03 (2001).

12

agents acted out of ignorance and not out of malice.[57] Also, the burden should be on the

employer-administrator to provide correct information to its front-line staff so that they do not

mislead and injure employee beneficiaries.[58]

## IV.    Discussion

In this case, Prudential has discretion to interpret the plan, evaluate  facts, and determine

eligibility.  If a discretionary standard is applied, Prudential's decision to deny benefits will be

reviewed for an abuse of discretion, and will not be overturned if the decision is reasonable and

supported by substantial evidence.  A *de novo* standard of review will be applied if Grimes can

show that there is evidence of serious procedural flaws, or a conflict of interest.

If a *de novo* standard is applied, and Grimes can show good cause,  additional evidence will

be admitted.  With respect to Grimes' equitable claims against Wal-Mart, a *de novo* standard of

review is automatic.

Prudential is the claims administrator, and owes a fiduciary duty to conduct a meaningful

review of Grimes' claim.  In this case, Grimes submitted enough evidence of serious procedural

flaws, which undermine the foundation of Prudential's conclusions.  In view of such evidence,

Prudential's decision to deny additional benefits appears to be the product of whim.

While a fiduciary has a duty to protect the plan's assets against meritless claims, it also has

a duty to see that those entitled to benefits receive them.[59]  An ERISA fiduciary presented with a

---

[57]*Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1049, n. 6 (9th Cir. 2000) (*en banc*).

[58]*Beach*, 382 F.3d at 669-70.

[59]*Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792 (10th Cir. 2004).

claim that may prove valid with additional evidence,  should seek to get to the truth of the matter.[60] A review of the administrative record reveals that  Prudential overlooked facts that may have led to a different conclusion.

Prudential did not consider Wal-Mart's plan summary when it denied benefits to Grimes. The plan summary conflicts with the plan language, because it creates an exception that is not in the plan.  A provision in the plan summary prevails if it conflicts with a provision of the plan.[61]

Prudential ignored the terms in Wal-Mart's plan summary that  created a "scheduled vacation" exception to being "actively at work."  The "scheduled vacation" exception was not addressed until Prudential filed its Response in Opposition to Plaintiff's Motion for Summary Judgment.[62]  At this point, the exception was given short shrift.

Prudential did not explain or attempt to explain the definition of "scheduled vacation."  It did not consider whether those terms include only vacation that is actually scheduled in advance, or vacation that is automatically designated as such when an employee is absent.  The answer to this question can be discovered through an investigation of the policies, practices, and personnel records of Wal-Mart.

Certain legal standards must be applied to define and interpret the terms "scheduled vacation."  The ERISA statutory scheme mandates that a plan summary description must be sufficiently accurate to reasonably inform participants and beneficiaries of their rights and

---

[60]*Toland v. McCarthy*, 499 F. Supp. 1183 (D.C. Mass. 1980).

[61]*Jensen v. SIPCO, Inc.*, 38 F.3d 945 (8th Cir. 1994).

[62]Doc.  No. 17.

obligations under the plan."[63]   An ambiguity in the plan summary must be resolved in favor of the employee and made binding against the drafter. Any uncertainty created by careless drafting must be borne by those who did the drafting -- not by the individual employee, who is powerless to influence the drafting process and who is not equipped to bear the financial hardship that might result from a misleading or confusing document.  Clarity and accuracy is not a lot to ask.[64]  In order to determine an accurate interpretation or definition of the term "scheduled vacation"-- additional evidence must be developed and considered.

During the administrative process, Prudential denied benefits based on the plan language that provided no exception for employees on vacation.  Thus, because Mr. Grimes was not at the job site on January 1, 2005, Prudential concluded, without further study, that the coverage never became effective.  This is not necessarily so.

Prudential made no investigation of employment records to determine if Wal-Mart designated Mr. Grimes as "on vacation."   If this was his designation on January 1, 2005 -- then there is no question that his additional coverage became effective.  Nor did Prudential check to see if Mr. Grimes requested vacation when he was first hospitalized.   These questions can be resolved by  reviewing Wal-Mart's employment records, payroll records, and their typical policies and practices.  The record must be opened to find out the answers to these questions.

Furthermore, if Grimes was designated as on vacation before his LOA was approved, then the dates on the leave form would be highly relevant.  The reason for the premium deduction is also

---

[63] 29 U.S.C. § 1022(a)(1).

[64] *Hansen v. Continental Insurance Co.*, 940 F.2d 971 (5th Cir. 1991).

important.   The premium may well have been deducted because Mr. Grimes was classified as on

vacation when the effective date of the additional coverage rolled around.

Because Prudential did not perform a meaningful review of the request for additional

benefits, the record contains serious procedural flaws which lessen the standard of review from a

discretionary review to a *de novo* review.   Furthermore, the "scheduled vacation" exception raises

numerous questions that remain unanswered, and, therefore, there is good cause to open the record

to admit additional evidence on these questions.

Wal-Mart, as the plan administrator owed a fiduciary duty of loyalty and a duty of care not

to misinform Mr. Grimes, and to act in his best interest at all times.   Wal-Mart is also obliged to

educate its non-fiduciary agents so that they do not make material misrepresentations to plan

participants such as Mr.  Grimes.

Grimes raised allegations that create doubts about Wal-Mart's conduct.  Grimes alleges that

a manager from Wal-Mart misled her late husband into applying for a LOA, which was detrimental

to his interest.  If Mr. Grimes had applied for vacation instead of a LOA, then his life insurance

would have been effective on January 1, 2005.  The application for a LOA was made on December

31, 2004 -- Wal-Mart should have been aware that, by making this application, Mr.  Grimes was

taking a course of action that would be adverse to his wife and child.   Yet, Wal-Mart remained

silent.  In view of this, the facts underlying the LOA application must be explored to determine the

intention of the manager involved; and to discover why the LOA was recommended, and under

whose authority it was made.

Grimes also alleges that Wal-Mart changed the dates on the LOA request in order to delay

the effective date of coverage.  If this and other such allegations can be proved, then Wal-Mart

breached its fiduciary duties not to mislead plan participants and to act in good faith.  Such

16

violations of ERISA would  entitle Grimes  to equitable relief.  Again, the record must be supplemented to resolve these issues and determine if Wal-Mart violated ERISA`.

The denial of benefits will be reviewed under a *de novo* standard.  The administrative record will be supplemented to determine if Grimes is entitled to benefits under the "scheduled vacation" exception.  The record will also be supplemented to determine if Grimes is entitled to equitable relief based on an alleged breach of duty by Wal-Mart.  The parties are therefore allowed to develop additional evidence through discovery.  A hearing will be scheduled to review the evidence.

The Motions for a Summary Judgment filed by Prudential and Grimes are DENIED, and Plaintiff's request for an opportunity for discovery and for a hearing is GRANTED.

IT IS SO ORDERED this 18th day of October 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE